UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES GRIMM,

                    Plaintiff,

          - against -

GARNET HEALTH d/b/a GARNET HEALTH
MEDICAL CENTER, LAUREN CARBERRY,
and GREGG HOUGH

                    Defendants.

**OPINION & ORDER**

21-CV-11056 (PMH)

PHILIP M. HALPERN, United States District Judge:

James Grimm ("Plaintiff") commenced this action on December 24, 2021 against Garnet Health Medical Center ("GHMC"), Lauren Carberry ("Carberry"), and Gregg Hough ("Hough" and together, "Defendants"). (Doc. 1, "Compl."). Plaintiff presses six claims for relief: (i) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") against GHMC; (ii) age discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") against all Defendants; (iii) disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12112 *et seq.*, ("ADA") against GHMC; (iv) disability discrimination in violation of the NYSHRL against all Defendants; (v) retaliation in violation of the ADEA and ADA against GHMC; and (vi) retaliation in violation of the NYSHRL against all Defendants. (*Id.*). Defendants filed an Answer to the Complaint on March 3, 2022 (Doc. 16), and the parties thereafter engaged in discovery pursuant to the Civil Case Discovery Plan and Scheduling Order (Doc. 21). Discovery concluded on December 9, 2022. (Doc. 29).

Pending before the Court is Defendants' motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56. (Doc. 52). Defendants filed, pursuant to the briefing schedule

set by the Court, their motion for summary judgment on May 22, 2023. (Doc. 52; Doc. 53, "Def. Br."; Doc. 54 "56.1 Stmt."; Doc. 55, "Carberry Decl."; Doc. 56, "Saccomano Decl."). Plaintiff filed his opposition papers (Doc. 57, "Pl. Br."; Doc. 58, "Pl. Decl."; Doc. 60, "Santos Decl. I"; Doc. 61, "Santos Decl. II"), and the motion was fully briefed with the filing of Defendants' reply. (Doc. 59, "Reply"; Doc. 62).

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement and Plaintiff's responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff was hired as a security guard at Horton Memorial Hospital, the predecessor of GHMC, on July 1, 1978. (56.1 Stmt. ¶ 5). Plaintiff left his employment with GHMC to work for a private company and returned to work at GHMC when he was 57 years old. (*Id.* ¶¶ 6-7). Plaintiff's duties as a security officer included familiarity with all emergency code procedures, responding to codes and radio/telephone messages in a timely manner, and searching patients' belongings for weapons. (*Id.* ¶¶ 13, 18). Plaintiff faced situations involving actual physical danger, such as combative patients and distraught visitors. (*Id.* ¶ 15). Plaintiff's role had certain physical demands, including lifting up to an average of 150 pounds as part of a two-person lift and standing up to six hours during a stationary post. (*Id.* ¶ 20). Plaintiff was promoted to Charge Officer while employed at GHMC, and as the Charge Officer was tasked with making sure all assignments were carried out. (*Id.* ¶¶ 29-30). Greg Mills, Plaintiff's direct manager from 2019 through his termination, reported to Gregg Hough, the Director of Security at GHMC. (*Id.* ¶¶ 31-33).

Plaintiff became a union representative at GHMC in or around 2001. (*Id.* ¶ 37). Plaintiff, in his role as union representative, brought employee grievances forward to Hough, some of which were complaints about Hough. (*Id.* ¶ 40). Plaintiff believed that being a union representative had an impact on his relationship with Hough because Hough was upset with the different complaints and grievances being reported to him. (*Id.* ¶ 41). Plaintiff submitted a letter to the GHMC human resources department on March 23, 2016 asserting that a copy of a grievance was provided to Hough in violation of the union contract. (*Id.* ¶ 42). Hough yelled at and retaliated against Plaintiff by removing him from the Charge Officer position. (*Id.*).

Plaintiff received a rating of "Meets Plus" from Hough in his 2015 performance review and wrote that Plaintiff "has extensive experience in hospital security" and "is a reliable and knowledgeable Officer." (*Id.* ¶ 52). Plaintiff received another "Meets Plus" rating from Hough in his 2016 and 2017 performance reviews, with Hugh noting that Plaintiff "places the patients and visitors needs above his own" and "understands the needs for a quiet, healing environment." (*Id.* ¶ 54, 57). Plaintiff received a rating of "Meets" on his 2018 performance review, with Hough listing several areas of deficiencies in Plaintiff's performance, including: "(1) failure to communicate effectively through radio, verbal, or written communication; (2) difficulty with computer programs; (3) failure to regularly follow chain of command which impedes operations at times; (4) reluctance to work with leadership in a productive manner; (5) inability to adapt to

change in methods of operation; and (6) ineffective mentoring of newer officers." (*Id.* ¶ 59).[1] Plaintiff again received a "Meets" rating in his 2019 performance review. (*Id.* ¶ 62).

Plaintiff was issued a "Final Warning in Lieu of Suspension" on February 11, 2019 arising from an incident on January 21, 2019 where Plaintiff "searched a patient's belongings on the desk of the Access Center" and "[h]ours later, while the patient was in 2 East BHU, the patient self-disclosed that he had a knife in his personal belongings, specifically in his sock." (Saccomano Decl., Ex. 30).[2] The February 11, 2019 Final Warning in Lieu of Suspension further provided that a subsequent search of the patient's belongings revealed that "a gravity knife was found in a new/banded pair of socks" and upon further investigations "it was determined that [Plaintiff] failed to search the items appropriately." (*Id.*). The union that Plaintiff was a member of filed a "Step III Grievance" in response to Plaintiff's Final Warning in Lieu of Suspension and GHMC held a grievance meeting on April 23, 2019 regarding the gravity knife incident. (56.1 Stmt. ¶¶ 74-75). On May 8, 2019, the Final Warning in in Lieu of Suspension was reduced to a written warning "to recognize Mr. Grimm's positive change in practice since receiving the disciplinary action and his prior discipline record." (*Id.* ¶ 76).

Hough, Carberry, and other members of GHMC management held an informal and non-disciplinary meeting with Plaintiff on January 31, 2020 to gauge how Plaintiff was feeling because

---

[1] Plaintiff denies this fact, stating that "[a]part from Mr. Hough, none of Mr. Grimm's co-workers ever told him that" his performance was deficient in any of the ways Mr. Hough listed in his 2018 performance review. (56.1 Stmt. ¶ 59). Plaintiff fails to specifically controvert that Hough's 2018 performance review listed those deficiencies, and as such, this fact is deemed admitted. *See Boatright v. U.S. Bancorp*, No. 20-4236, 2022 WL 351059 (2d Cir. Feb. 7, 2022) ("[W]e conclude that [the district court] did not abuse its discretion in crediting as undisputed those facts that [the non-movant] did not properly controvert in her opposition and on which the court relied in granting summary judgment.").

[2] Plaintiff does not dispute that he received a Final Warning in Lieu of Suspension arising from the January 21, 2019 search, but nevertheless states that he "performed the appropriate search to determine whether the patient had any weapons" and that "[i]t is possible that, while the patient was at the hospital, someone provided the gravity knife to him." (56.1 Stmt. ¶ 73 (citing Pl. Decl. ¶¶ 15-16)).

there were concerns about his well-being. (*Id.* ¶¶ 81-82).[3] Carberry and Christopher Costello–GHMC Director of Occupational Health and Wellness–explained to Plaintiff that he did not need to disclose any medical condition, but that he should have a separate conversation with Costello. (*Id.* ¶ 83). Hough discussed with Plaintiff that other staff members felt that Plaintiff takes a "back seat" during Code Grays. (*Id.* ¶ 90). A Code Gray is invoked when a patient is violent. (*Id.* ¶ 28). Plaintiff never discussed, nor requested, any accommodation. (*Id.* ¶ 84). Hough observed a video of Plaintiff standing behind a nurse instead of dealing with a volatile patient. (*Id.*; *see also* Saccomano Decl., Ex. 2, Hough Dep. Tr. at 39:5-18).[4]

Carberry became aware that Plaintiff wore hearing aids during the January 31, 2020 meeting. (56.1 Stmt. ¶ 93). Hough was aware that Plaintiff wore hearing aids at the time that Plaintiff was hired. (*Id.* ¶ 96). Plaintiff was asked if he was having any trouble with his hearing aids and if he could explain why he was not responding on the radio when people were calling. (*Id.* ¶ 94). Plaintiff replied that his hearing aids were working fine. (*Id.*). Plaintiff did not have trouble with his hearing aids in either 2019 or 2020 and could fully hear with the hearing aids. (*Id.* ¶ 95). Neither Plaintiff's position nor his assignments changed following the January 31, 2020 meeting and Plaintiff does not recall Hough or anyone from Human Resources speaking to him about his hearing again after the January 31, 2020 meeting. (*Id.* ¶¶ 97-98).

---

[3] Plaintiff states, in response to this fact, that "Plaintiff was able to perform his job duties up to the day he was terminated from Garnet." (56.1 Stmt. ¶ 82). Plaintiff's denial does not specifically controvert the fact that GHMC held an informal, non-disciplinary meeting with Plaintiff because there were concerns about his well-being, and as such, Paragraph 82 of the 56.1 Statement is deemed admitted.

[4] Plaintiff generally states that he did not take a backseat during Code Grays and was not reluctant to get involved with violent patients. (56.1 Stmt. ¶ 90). Plaintiff fails to specifically controvert that Hough observed a video of Plaintiff standing behind a nurse instead of dealing with a volatile patient during a Code Gray, and as such, that fact is deemed admitted.

A Code Gray was called on March 1, 2020 because of a physical altercation between two patients, which required two hospital staff members to intervene. (*Id.* ¶¶ 106-107; Saccomano Decl., Ex. 50). Plaintiff was on the floor where the fight occurred but did not see the patients fighting, and did not intervene or otherwise respond to the Code Gray. (*See* 56.1 Stmt. ¶¶ 106-107; Saccomano Decl., Ex. 50; Pl. Decl. ¶¶ 30-31). Hough met with Plaintiff on March 5, 2020 to ask if there was any reason for his failure to respond to the March 1, 2020 Code Gray and Plaintiff responded that he did not see the patients fighting. (56.1 Stmt. ¶ 108). Plaintiff had a meeting with Costello on June 2, 2020 to discuss Plaintiff's health, his ability to perform his job to its fullest, and about his retirement. (*Id.* ¶ 117; Santos Decl. I, Ex. I).

Hough received a complaint regarding Plaintiff on February 17, 2021 from another staff member because Plaintiff was not properly screening visitors for COVID. (56.1 Stmt. ¶ 123). Plaintiff was coached on the proper screening procedures but was not issued any discipline. (*Id.*). Another GHMC security officer attempted to reach Plaintiff on his radio on March 25, 2021 but was unable to contact him, resulting in other security officers searching for Plaintiff for about 25 minutes. (*Id.* ¶ 124).[5] Plaintiff's radio was checked by another security officer after the March 25, 2021 incident, who determined it was working. (*Id.* ¶ 125).

Plaintiff was placed on unpaid suspension for a month on March 30, 2021 in connection with his response to two emergency incidents. (*Id.* ¶ 131). The first emergency incident was a suspicious package that was left in front of the hospital. (*Id.* ¶ 132). The second emergency incident was a "Code Gray 5" which was a violent patient that required the response of law enforcement in

---

[5] Plaintiff contends in response that he has no recollection or knowledge of another security officer attempting to reach him on his radio on March 25, 2021 or other security officers searching for him on that day. (56.1 Stmt. ¶ 124). When a party merely states that it lacks information regarding a fact instead of specifically controverting it, the fact is treated as "undisputed for purposes of summary judgment." *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14-CV-05213, 2017 WL 3669625, at *1 n.3 (S.D.N.Y. Aug. 8, 2017). Paragraph 124 of the 56.1 Statement is, accordingly, deemed admitted.

the emergency department. (*Id.*). Review of surveillance video and assignment sheets revealed that Plaintiff was sitting at a volunteer desk at the time of the emergencies. (*Id.*). Plaintiff testified that he did not respond to the Code Gray in the emergency department because he was told to remain at the maternity ward by Devaki Girdhari, the charging security officer. (*Id.* ¶ 135). Plaintiff was terminated by Hough and Carberry on April 28, 2021. (*Id.* ¶ 137).

A review of surveillance video showed that Plaintiff would sit at a volunteer desk for extended periods of time when he was assigned to "floating/grounding" which required him to be moving throughout the units. (*Id.* ¶ 141). Plaintiff sat at the volunteer desk for a total of 6.75 hours from February 28, 2021 to March 30, 2021. (*Id.*). The surveillance video review showed another security officer sitting at the volunteer desk as well, and that security officer was not suspended for three days and not terminated because it was an isolated event for him. (*Id.* ¶ 147). Plaintiff was provided multiple opportunities to request an accommodation, but he consistently stated that he did not have any restrictions and did not request any accommodations. (*Id.* ¶ 143).

A.  <u>Plaintiff's Internal Complaint and EEOC Charges</u>

Plaintiff submitted an internal complaint to Gene Bernier, a Vice President at GHMC, on or about May 5, 2020 asserting that he was being subjected to discrimination due to his age and perceived disability. (Santos Decl. II, Ex. AA). Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 21, 2020 ("First EEOC Charge"). (56.1 Stmt. ¶ 163). The First EEOC Charge alleged that Hough and Carberry engaged in discrimination on the basis of Plaintiff's age and perceived disability during the January 31, 2020 meeting (*Id.* ¶ 164). Hough became aware of the First EEOC Charge in August 2020, almost a year before Plaintiff's termination. (*Id.* ¶ 165). The EEOC issued a Notice of Right to Sue for the First EEOC Charge on November 16, 2020. (*Id.* ¶ 166). Plaintiff did not file a lawsuit within 90

days of receiving the November 16, 2020 Notice of Right to Sue in connection with the First EEOC Charge. (*Id.* ¶ 167).

Plaintiff filed a second Charge of Discrimination with the EEOC on April 7, 2021 ("Second EEOC Charge"). (*Id.* ¶ 168). The Second EEOC Charge alleged that "[a]fter the EEOC issued a Right to Sue Letter for Charge No. 1 to Mr. Grimm, the Individual Respondents began their campaign to retaliate against Mr. Grimm for filing his Charge No. 1, his prior internal EEO complaint(s), his opposition to respondents' unlawful discrimination and retaliation, and for his union activity." (*Id.* ¶ 169). The Second EEOC Charge was filed before Plaintiff's termination. (*Id.* ¶ 170). The EEOC issued Plaintiff a Notice of Right to Sue for the Second EEOC Charge on September 27, 2021. (*Id.* ¶ 171).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[6] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Medical Center*, No. --- F.4th ---, 2024 WL 439465, at *14 (2d Cir. Feb. 6, 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 2024 WL 439465, at *14 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*,

475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[ ] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008)) (collecting cases). "Because of the likelihood that 'direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Id.* (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). "At the same time, [the Second Circuit has] also made it clear that 'the salutary purposes

of summary judgment–avoiding protracted and harassing trials–apply no less to discrimination cases than to . . . other areas of litigation.'" *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). Accordingly, "even in the discrimination context, a plaintiff must still present more than conclusory allegations to survive a motion for summary judgment." *Banks*, 81 F.4th at 259 (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 92 (2d Cir. 1996)).

## ANALYSIS

I.   ADEA Age Discrimination Claim (First Claim)

Plaintiff alleges, in his first claim for relief, that Defendants discriminated against him due to his age in violation of the ADEA. (Compl. ¶¶ 37-40). "The Second Circuit applies the *McDonnell Douglas* framework to age discrimination under the ADEA when analyzing claims based on circumstantial evidence." *Rivera v. Greater Hudson Valley Health Sys.*, No. 21-CV-01324, 2023 WL 2588308 (S.D.N.Y. Mar. 21, 2023) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)). At the first stage, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Gorzynski*, 596 F.3d at 106. Plaintiff must show, at the *prima facie* stage, "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 107. Plaintiff must also show that "age was the but-for cause of the challenged adverse employment action and not just a contributing or motivating factor." *Id.* If Plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action." *Id.* "Once such a reason is provided, the plaintiff can no longer rely on the *prima facie* case, but may still prevail if [ ]he can show that the employer's determination was in fact the result of discrimination." *Id.*

A. Timeliness

Under the ADEA, "a plaintiff has 300 days from the allegedly discriminatory action to file a charge with the EEOC if, as is the case in New York, a state agency . . . enforces a law that prohibits employment discrimination on the same basis as these federal statutes." *Harewood v. New York City Dep't of Educ.*, No. 21-584, 2022 WL 760739, at *1, n.1 (2d Cir. Mar. 14, 2022). Plaintiff's First EEOC Charge, filed July 21, 2020, alleged that during the January 31, 2020 meeting, Hough and Carberry "engaged in discrimination and harassment (but primarily Hough) on the basis of Mr. Grimm's age and actual and/or perceived disability." (56.1 Stmt. ¶¶ 163-164). The EEOC issued Plaintiff a Notice of Right to Sue on the First EEOC Charge on November 16, 2020, but he did not sue within 90 days of his receipt of the notice. (*Id.* ¶¶ 166-167). Plaintiff filed his Second EEOC Charge on April 7, 2021 and received a Notice of Right to Sue for the Second EEOC Charge on September 27, 2021. (*Id.* ¶¶ 168, 171).

Defendant argues that "[b]ecause acts prior to the 300 days preceding a charge are not actionable, Mr. Grimm's claims based on acts of discrimination before June 11, 2020, such as the January 31, 2020 meeting, are time-barred." (Def. Br. at 9). Plaintiff concedes that "acts of discrimination and retaliation prior to June 11, 2020 are not actionable" but nevertheless argues that the Court can consider conduct before that date "as background evidence in support of a timely claim." (Pl. Br. at 14). Plaintiff relies on *Davis-Garrett v. Urban Outfitters, Inc.* in support of this argument, where the Second Circuit held that untimely conduct could be considered "as background evidence" when analyzing hostile work environment claims because such claims by "their very nature involve[] repeated conduct." 921 F.3d 30, 42 (2d Cir. 2019). Plaintiffs do not

press any claims for hostile work environment in this action, and accordingly, there is no basis for the Court to consider conduct occurring before June 11, 2020 in analyzing the ADEA claims.[7]

      B. *Prima Facie* Case

Defendants argue that Plaintiff cannot establish a *prima facie* case of age discrimination because (1) Plaintiff was not qualified for his position and (2) Plaintiff's suspension and termination did not occur under circumstances giving rise to an inference of age discrimination. (Def. Br. at 11-14). The Court addresses each of these arguments in turn.

      1. Plaintiff's Qualification

Defendants argue that Plaintiff cannot establish that he was qualified for his position because "the undisputed facts establish that [Plaintiff] did not satisfactorily perform his duties as a Security Officer." (Def. Br. at 11). Plaintiff argues that "there is sufficient record evidence from which a reasonable fact-finder can conclude that [Plaintiff] satisfactorily performed his job duties up to the date he was suspended." (Pl. Br. at 21). "To establish a *prima facie* case under the ADA, Title VII, and the ADEA, a plaintiff must show, *inter alia*, that he was qualified for the position he held at the time of termination." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). "In opposing a defendant's motion for summary judgment, 'a plaintiff may satisfy this burden by showing that [ ]he possesses the basic skills necessary for performance of the job.'" *Id.* (quoting *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 45 (2d Cir. 2015)); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) ("As we have repeatedly held, the qualification necessary to shift the burden to defendant for an explanation of

---

[7] "A plaintiff raising an ADA claim of discrimination must exhaust all administrative remedies by filing an EEOC charge within 300 days of the alleged discriminatory conduct." *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017). Accordingly, conduct occurring before June 11, 2020 is not actionable for purposes of Plaintiff's claims brought under both the ADEA and ADA.

the adverse job action is minimal; plaintiff must show only that he possesses the basic skills necessary for performance of the job."). "As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Slattery*, 248 F.3d at 92.

The court in *Rivera*, which also involved age discrimination claims by a GHMC security officer, held that the plaintiff "ha[d] not established his *prima facie* showing that he was qualified for his position" where the employer-defendant "present[ed] evidence of unsatisfactory work performance" and the security officer-plaintiff "fail[ed] to point to evidence on the record corroborating his testimony and contradicting the documentary evidence on the record." 2023 WL 2588308, at *11. Defendants argue that Plaintiff understood that he was responsible for responding "promptly and appropriately to Codes" in his role as a security officer but that "numerous complaints from other Security Officers and surveillance videos" show Plaintiff's repeated failure to properly respond to Code Grays. (Def. Br. at 11 (citing 56.1 Stmt. ¶¶ 13, 19, 27, 90, 106-110, 126-128, 131-134, 140)). Plaintiff argues—relying on his affidavit, his deposition testimony, and the affidavits of his co-workers Herbert Epps and George Rivera executed after the close of discovery in this case—that he "did not take a backseat during incidents involving fighting, nor was he reluctant to get involved with violent patients." (Pl. Br. at 20). Plaintiff's affidavit and deposition testimony reflecting his "subjective belief he is qualified will not suffice" for purposes of establishing a *prima facie* case. *Adeniji v. New York State Off. of State Comptroller*, 557 F. Supp. 3d 413, 435 (S.D.N.Y. 2021), *aff'd*, No. 21-2496, 2022 WL 16543188 (2d Cir. Oct. 31, 2022). Both Herbert Epps and George Rivera state in their affidavits that, based on their personal observations, they did not ever see Plaintiff "avoid responding to dangerous and/or volatile situations, including those involving Code Gray calls." (Santos Decl. I, Ex. E ¶ 9; Ex. F ¶ 12).

Epps and Rivera provide general observations of Plaintiff's conduct but do not speak to whether Plaintiff adequately responded to any specific incident. (*Id.*). Neither Epps nor Rivera state that they were present during the Code Grays on either March 1, 2020, March 20, 2021, or March 21, 2021, which are the three Code Grays to which Defendants contend that Plaintiff failed to adequately respond. (*Id.*). Nonetheless, the "inference of minimal qualification is not difficult to draw" because Plaintiff worked for GHMC as a security officer for nearly 21 years before being terminated. *Slattery*, 248 F.3d at 92; *see also Tyson v. Town of Ramapo*, No. 17-CV-04990, 2023 WL 3949057, at *5 (S.D.N.Y. June 12, 2023) (plaintiff "made the minimal showing that she possesses the basic skills necessary" for a finding that she was qualified for a position she worked for ten years). Accordingly, the Court holds that Plaintiff was qualified for purposes of establishing a *prima facie* case of discrimination.

2.   Inference of Discrimination

Defendant argues that Plaintiff's suspension and termination did not occur under circumstances giving rise to an inference of age discrimination because: (i) age was not the but-for cause of Plaintiff's suspension or termination; (ii) Plaintiff's suspension and termination stemmed from his failure to respond appropriately to Code Grays; (iii) Plaintiff was 57 years old when he was hired back at GHMC and Hough hired many officers over the age of 60. (Def. Br. at 12-14). Plaintiff argues that Defendants remarks about Plaintiff's retirement and comments describing Plaintiff as disoriented give rise to an inference of age discrimination. (Pl. Br. at 21-23). Plaintiff cites to (i) his own affidavit in which he states that "[p]rior to his employment, Mr. Devaki Girdhari told [Plaintiff] that Hough asked him as to when he was going to retire" and (ii) an email sent by Costello to Hough following Costello's June 2, 2020 meeting with Plaintiff in

which he recounts speaking with Plaintiff "about his health, his ability to perform his job to its fullest, and talked a bit about next steps (retirement)." (Santos Decl. I, Ex. I).[8]

The comments by Hough and Costello inquiring about his retirement that Plaintiff relies upon are no more than "stray remarks unconnected to any purported adverse employment decision, which are insufficient to demonstrate an intent to discriminate on the basis of [his] age." *Gittens-Bridges v. City of New York*, No. 22-810, 2023 WL 8825342, at *2 (2d Cir. Dec. 21, 2023). "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action and not just a contributing or motivating factor." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Plaintiff's Second EEOC Charge stated that he believed that his suspension and termination were brought about, at least in part, "for his union activity." (56.1 Stmt. ¶ 169). Plaintiff was 57 years old when he was hired back by GHMC and Hough hired multiple security officers who were over the age of 60 years old. (*Id.* ¶¶ 6-7, 158). These undisputed facts, taken together, severely undermine any inference that the but-for cause of Plaintiff's suspension and termination was age discrimination. *See Gundlach v. Int'l Bus. Machines Corp.*, No. 11-CV-00846, 2012 WL 1520919, at *6 n.6 (S.D.N.Y. May 1, 2012) (noting that a plaintiff being over 40 years old both at hiring and termination "would undermine his age discrimination claim) (collecting cases); *Larocca v. Frontier Commc'ns, Corp.*, No. 13-CV-01872, 2016 WL 74393, at *4 (D. Conn. Jan. 6, 2016) ("The fact that defendant hired someone at the same

---

[8] "In any case, even if plaintiff was asked about his retirement plans, inquiries about retirement plans 'do not necessarily show animosity towards age.'" *Jetter v. Knothe Corp.*, 200 F. Supp. 2d 254, 264 (S.D.N.Y. 2002), *aff'd*, 324 F.3d 73 (2d Cir. 2003) (quoting *Greenberg v. Union Camp*, 48 F.3d 22, 29 (1st Cir. 1995)). Costello's remarks concerning Plaintiff's retirement plans took place in the context of a broader conversation about Plaintiff's ability to perform his job and do not therefore necessarily imply any animosity towards Plaintiff's age. Plaintiff makes no attempt to connect the inquiries about his retirement to his suspension or termination.

time who was essentially the same age as plaintiff severely undermines any plausible inference that the company was out to discriminate against plaintiff on the basis of age."). Plaintiff has failed to establish by a preponderance of the evidence that his suspension and termination occurred under circumstances giving rise to an inference of age discrimination.

Accordingly, Plaintiff has failed to establish a *prima facie* case of age discrimination under the ADEA.

### C.  Legitimate, Non-Discriminatory Reason and Pretext

Even if Plaintiff had met his burden to establish that his termination occurred under circumstances giving rise to an inference of discrimination, Defendants contend that they have established legitimate, non-discriminatory reasons for his termination and that Plaintiff has failed to demonstrate that those reasons were a mere pretext for unlawful discrimination. Specifically, Defendants contend that Plaintiff was suspended and terminated because of "his recurrent failure to respond adequately to Codes and overall neglect of his duties as a Security Officer." (Def. Br. at 14). Plaintiff attempts to justify his failure to respond to the Code Grays by arguing that (i) he did not see the patients fighting during the March 1, 2020 Code Gray; and (ii) he was ordered to remain at the maternity ward by the Charging Officer during the March 20, 2021 and March 21, 2021 Code Grays. (Pl. Br. at 20). Plaintiff does not dispute that he neglected his duties by sitting at a volunteer desk for a total of 6.75 hours during periods when he was responsible for moving throughout the hospital. (56.1 Stmt. ¶ 141).

The Second Circuit has repeatedly noted that "in a discrimination case, this Court is 'decidedly not interested in the truth of the allegations against the plaintiff,' because 'the factual validity of the underlying imputation against the employee is not at issue.'" *Guangyu Zhao v. Time, Inc.*, 440 F. App'x 50, 51 (2d Cir. 2011) (quoting *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d

211, 216 (2d Cir. 2006)). The relevant inquiry is only "what motivated the employer" and as such, "the factual validity of the underlying imputation against the employee is not at issue." *McPherson*, 457 F.3d at 216. Defendants have satisfied their burden and established a legitimate, non-discriminatory reason for the adverse employment action, regardless of whether Plaintiff was justified in not responding to the Code Grays at issue or otherwise failing to carry out his responsibilities. *See McEvoy v. Fairfield Univ.*, 844 F. App'x 420, 421 (2d Cir. 2021) ("even assuming that McEvoy was a high performer, she failed to marshal evidence that the decisionmakers did not believe that her performance was deficient at least in some areas based on complaints received from others"); *Martinez-Amezaga v. N. Rockland Cent. Sch. Dist.*, No. 21-CV-00521, 2024 WL 167270, at *7 (S.D.N.Y. Jan. 16, 2024).

The only evidence Plaintiff offers to support of his age discrimination claims is his "disagreement with defendants that [his] employment conduct was inappropriate." *Wong v. Blind Brook-Rye Union Free Sch. Dist.*, No. 20-CV-02718, 2022 WL 17586324, at *15 (S.D.N.Y. Dec. 12, 2022). However, "it is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." *Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008). Plaintiff fails to meet his burden to show that Defendants' reasons were a pretext for age discrimination.[9] Plaintiff offers nothing more to

---

[9] Plaintiff does not argue or otherwise suggest that the affidavits from his coworkers Epps and Rivera are evidence of pretext. Even if he did advance such an argument, it would fail because Epps and Rivera speak only generally to their firsthand observations about Plaintiff's performance and do not speak to the specific incidents or performance deficiencies identified by Defendants, such as the three Code Grays that occurred in March 2020 and March 2021 or Plaintiff sitting for extended periods when he was supposed to be patrolling. Epps and Rivera furthermore do not suggest that Defendants had a discriminatory intent in suspending and terminating Plaintiff or that the legitimate, non-discriminatory reason they provided for his termination was in any way false.

demonstrate pretext than the same arguments advanced to support an inference of discrimination on his *prima facie* case. For the same reasons set forth above concerning the *prima facie* case, the Court finds that Plaintiff has failed to establish that the legitimate, non-discriminatory reasons proffered by Defendants for his termination were a pretext for unlawful discrimination.

"There is neither a strong *prima facie* case, nor credible evidence that the employer's explanation was not held in good faith, nor any direct evidence of discriminatory intent." *Martinez-Amizaga*, 2024 WL 167270, at *7 (quoting *Flynn v. McCabe & Mack LLP*, No. 15-CV-05776, 2018 WL 794631, at *12 (S.D.N.Y. Feb. 8, 2018)). Accordingly, Defendants' motion for summary judgment on Plaintiff's first claim for age discrimination under the ADEA is GRANTED.

## II.   ADA Disability Discrimination Claim (Third Claim)

Plaintiff alleges, in his third claim for relief, that Defendants discriminated against him due to his actual and/or perceived disability in violation of the ADA. (Compl. ¶¶ 41-42).[10] The *McDonnell Douglas* burden-shifting framework is used to analyze disability discrimination claims. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first, under that framework, establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.; see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("Under that framework, a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of

---

[10] Although the Complaint frames the disability discrimination claims as pressing theories of liability under actual disability and perceived disability, Plaintiff only references the perceived disability theory of liability in his opposition brief despite Defendants' motion addressing the actual disability theory of liability. To the extent that the third and fourth claims pressed claims for discrimination due to an actual disability in violation of the ADA, the Court deems such claims abandoned due to Plaintiff's failure to address those claims in his motion papers. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned").

production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.").

> A. *Prima Facie* Case

A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "his employer is subject to the ADA;" (2) "he is disabled within the meaning of the ADA or perceived to be so by his employer;" (3) "he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). To succeed on a discriminatory discharge claim, the plaintiff must establish "that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A "plaintiff need only establish that [the] defendant regarded him [or her] as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [defendant] believed the impairment affected him [or her].'" *Terpening v. McGinty*, No. 21-CV-01215, 2022 WL 17418268, at *10 (N.D.N.Y. Oct. 5, 2022) (quoting *Rodriguez v. Verizon Telecom*, No. 13-CV-06969, 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014)), *adopted by* 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).Plaintiff argues that "it is undisputed that defendants knew of Mr. Grimm's hearing impairment based on the fact that plaintiff advised them that he wore hearing aids, and they asked him whether Mr. Grimm wanted [to] ask for reasonable accommodation." (Pl. Br. at 24). Defendants being aware that Plaintiff wore hearing aids, without more, is insufficient to establish a *prima facie* case for discrimination based on perceived disability. "A plaintiff must prove more than an employer's simple awareness of an employee's impairment; the mere fact that an employer is aware of an employee's impairment is

insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-01712, 2023 WL 6162866, at *6 (S.D.N.Y. Sept. 21, 2023). The only reference to Plaintiff's hearing aids was during the January 31, 2020 meeting, where Plaintiff was asked if he could explain why he was not responding on the radio when people were calling him and Plaintiff replied that his hearing aids were working fine. (56.1 Stmt. ¶ 94). The record contains no further reference to Defendants discussing, referring to, commenting on, or otherwise considering Plaintiff's hearing. Plaintiff fails to point to any evidence connecting his suspension and termination to him wearing hearing aids. The evidence in the record, even construed in Plaintiff's favor, is not enough for him to establish a *prima facie* case of discrimination at summary judgment, let alone to establish that Defendants discriminated against Plaintiff on the basis of a perceived disability. S*ee Dooley v. JetBlue Airways Corp.*, No. 14-CV-04432, 2017 WL 3738721, at *6 (S.D.N.Y. Aug. 29, 2017), *aff'd*, 751 F. App'x 52 (2d Cir. 2018).

      B.  <u>Legitimate, Non-Discriminatory Reason and Pretext</u>

As the Court discussed above, even if Plaintiff had made out a *prima facie* case of disability discrimination, Plaintiff's disability discrimination claims separately fail because Defendants have offered a legitimate, non-discriminatory reason for Plaintiff's suspension and termination and Plaintiff has failed to offer any evidence showing that Defendants' reason was pretextual. *See supra*.

Accordingly, Defendants' motion for summary judgment on Plaintiff's third claim for disability discrimination under the ADA is GRANTED.

    III.   <u>ADEA and ADA Retaliation Claim (Fifth Claim)</u>

Plaintiff alleges, in his fifth claim for relief, that GHMC retaliated against him due to his complaints that he was being subjected to age and disability discrimination in violation of the

ADEA and ADA. (Compl. ¶¶ 45-46). To prevail on a claim of retaliation under the ADA or ADEA "a plaintiff must show that 1) the employee engaged in protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action." *Concepcion v. City of New York*, No. 15-CV-02156, 2016 WL 386099, at *18 (S.D.N.Y. Jan. 29, 2016), *aff'd*, 693 F. App'x 31 (2d Cir. 2017). ADA and ADEA retaliation claims are governed by the *McDonnell Douglas* burden-shifting framework. *Id.*

### A. *Prima Facie* Case

Plaintiff, in seeking to establish a *prima facie* case of retaliation, cites to (i) the temporal proximity between his EEOC Charges and his termination and (ii) the "excessive scrutiny" he was subjected to following his EEOC Charges. (Pl. Br. at 16-17). Plaintiff's First EEOC Charge was filed on July 21, 2020 and the Second EEOC Charge was filed on April 7, 2021. (56.1 Stmt. ¶¶ 163, 168). Plaintiff received a final written warning in lieu of suspension on February 11, 2019, he received a one-month suspension on March 30, 2021, and he was terminated on April 28, 2021. (*Id.* ¶¶ 73, 131, 137). Defendants argue that "there is no causal connection between the Second EEOC Charge and Mr. Grimm's termination because Mr. Grimm had already been placed on suspension pending investigation before he filed his Second EEOC Charge on April 7, 2021." (Def. Br. at 24).

"Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery*, 248 F.3d at 95. Defendants in this case, like in *Slattery*, suspended and ultimately terminated Plaintiff as part of "an extensive period of progressive discipline" which began with the February 11, 2019 written warning issued more than two years

22

before Plaintiff's termination. The written warning escalated to a one-month suspension on March 30, 2021 stemming Plaintiff's failure to adequately respond to at least three Code Grays in March 2020 and March 2021 and ultimately resulted in Plaintiff's termination on April 28, 2021. An inference of retaliation does not arise, when placed in the context of this "period of progressive discipline," merely based on the timing between the Second EEOC Charge and Plaintiff's suspension. *Slattery*, 248 F.3d at 95; *Sarkis v. Ollie's Bargain Outlet*, No. 10-CV-06382, 2013 WL 1289411, at *15 (W.D.N.Y. Mar. 26, 2013), *aff'd*, 560 F. App'x 27 (2d Cir. 2014) ("temporal proximity between the filing of an EEOC complaint and an employee's termination does not establish a causal nexus when the employee was already facing discipline for poor performance at the time he filed the EEOC complaint").

Plaintiff's argument that he was subject to "excessive scrutiny" in retaliation for his protected activities is similarly unavailing. Plaintiff relies on *Hill v. Rayboy-Brauestein* in support of his argument that excessive scrutiny can establish a *prima facie* case of retaliation. 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006). Judge Karas ruled in *Hill* that "[e]xcessive scrutiny, without more, does not constitute an adverse employment action" and further that the excessive scrutiny plaintiff may have received there "came about as a result of poor performance." *Id*. at 355 (collecting cases). The record shows that Defendants conducted a review of surveillance videos which showed that Plaintiff and another security officer were sitting at a volunteer desk for extended periods and both Plaintiff and the other security officer were issued suspensions as a result of the investigation. (56.1 Stmt. ¶¶ 146-147). Plaintiff has not adduced any evidence establishing that Defendants treated him any differently than other security officers. The record instead shows, to the contrary, that the only other security officer that was discovered to be sitting for extended periods was also disciplined. Plaintiff has not met his burden of establishing a *prima facie* case of retaliation.

C.  <u>Legitimate, Non-Discriminatory Reason and Pretext</u>

As the Court discussed above, and even if there was a *prima facie* case of retaliation, Plaintiff's retaliation claims separately fail because Defendants have offered a legitimate, non-discriminatory reason for Plaintiff's suspension and termination. Plaintiff "claims he received increased scrutiny" which he argues raises an issue of fact as to whether his termination was "pretext for unlawful discrimination and retaliation." (Pl. Br. at 16). Plaintiff fails to point to any evidence on the record in support of his claim that he received increased scrutiny in retaliation for his protected activities. "Theories and beliefs, however, are not enough to survive summary judgment. Evidence is required." *DiFolco v. MSNBC Cable L.L.C.*, No. 06-CV-04728, 2011 WL 5519824, at *9 (S.D.N.Y. Nov. 9, 2011). "Plaintiff fails to provide any evidence undermining [Defendants'] reasonable belief or any other evidence of pretext revealing discriminatory intent beyond the four corners of his own mind and necessary to create a triable issue of fact." *Handler v. Dutchess Cnty. Comm. Coll.*, No. 21-CV-02637, 2024 WL 343091, at *6 (S.D.N.Y. Jan. 30, 2024). The Court cannot conclude that, even when viewing the evidence in the light most favorable to Plaintiff, Defendants' proffered legitimate, non-discriminatory reasons for Plaintiff's termination were merely a pretext for a retaliatory decision.

Accordingly, Defendants' motion for summary judgment on Plaintiff's fifth claim for retaliation under the ADEA and ADA is GRANTED.

IV.  <u>NYSHRL Claims (Second, Fourth, and Sixth Claims)</u>

Plaintiff brings—as her second, fourth, and sixth claims for relief—claims for age discrimination, disability discrimination, and retaliation under the NYSHRL. (Compl. ¶¶ 39-40,

43-44, 47-48).[11] The New York state legislature amended the NYSHRL, effective August 12, 2019, and the relevant amended provision states:

> The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct. Nothing contained in this article shall be deemed to repeal any of the provisions of the civil rights law or any other law of this state relating to discrimination; but, as to acts declared unlawful by section two hundred ninety-six of this article, the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other state civil action based on the same grievance of the individual concerned. If such individual institutes any action based on such grievance without resorting to the procedure provided in this article, he or she may not subsequently resort to the procedure herein.

N.Y. Exec. Law § 300. The effect of the amendment is to make the standard for NYSHRL claims closer to the more liberal standard of the New York City Human Rights Law ("NYCHRL"). [12] *See DeAngelo v. MAXIMUS/NY Medicaid Choice*, No. 19-CV-07957 (CS), 2022 WL 3043665, at *13 (S.D.N.Y. Aug. 2, 2022); *see also Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) ("While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL,

---

[11] Plaintiff's NYSHRL claims are before the Court solely pursuant to the Court's supplemental jurisdiction given that that the Court has granted summary judgment in favor of Defendants on Plaintiff's federal claims. "District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).

[12] Plaintiff carries a lighter burden of proof to establish *prima facie* of discrimination under the amended NYSHRL, pursuant to which a plaintiff "need only satisfy the mixed-motive standard, whereby the plaintiff need only show that age was a motivating factor in her adverse employment action." *Nazon v. Time Equities, Inc.*, No. 21-CV-08680, 2022 WL 18959570, at *11 (S.D.N.Y. Nov. 22, 2022).

some courts in this Circuit have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL."). The NYSHRL amendment was signed in August 2019 and applies to claims occurring on or after October 11, 2019, without retroactive effect. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).

Plaintiff's NYSHRL claims rest on conduct post-dating the amendment's effective date. Accordingly, the amended, more liberal standard of the NYSHRL applies. Neither party alerted the Court to the current, post-amendment NYSHRL standard in their briefs. The parties instead analyzed the ADEA, ADA, and NYSHRL as coextensive. Given the "separate and independent inquiry the Court would need to undertake in this evolving area of law and that the parties have not briefed the [NYSHRL] claims distinctly and adequately, the factors of convenience, comity and judicial economy favor declining jurisdiction" over Plaintiff's NYSHRL claims. *Summit v. Equinox Holdings, Inc.*, No. 20-CV-04905, 2022 WL 2872273, at *17 (S.D.N.Y. July 21, 2022). "That the parties briefed the NYSHRL claims under an outdated legal standard reinforces the reasons . . . for not exercising supplemental jurisdiction over these claims." *Id.* at *18.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims, and dismisses same without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment with respect to Plaintiff's first, third, and fifth claims for relief is GRANTED. The Court declines to exercise supplemental jurisdiction over Plaintiff's second, fourth, and sixth claims for relief and dismisses same without prejudice.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 54 and close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          February 15, 2024

_____
PHILIP M. HALPERN
United States District Judge